George W. THOMAS, Jr., Petitioner,

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**
Respondent.

No. 96–3345.

United States Court of Appeals,
Federal Circuit.

Sept. 8, 1997.

Eric N. Lieberman, Williams & Connolly, Washington, DC, argued for petitioner. With him on the brief was Terrence O'Donnell. Of counsel was J. Alan Galbraith.

Lara Levinson, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for respondent. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director. Of counsel on the brief was Carol W. Bernstein, Department of Housing and Urban Development, of Washington, DC.

Before MICHEL, PLAGER and LOURIE, Circuit Judges.

PLAGER, Circuit Judge.

This case pits a government agency against an ostensibly undesirable employee who complains that the agency, having promised not to tell future employers about the employee's performance, broke its promise. The employee, who had agreed to resign in exchange for the agency's promise, wants to renege on his agreement. When the agency refused to let him, he took his case to the Merit Systems Protection Board ("Board"). The Board held that, despite the agency's having broken its promise, the agency could hold the employee to the agreement. The Board is wrong; we reverse and remand.

## BACKGROUND

George W. Thomas, Jr. ("Petitioner") began his career with the Federal Government in 1974. After 10 years of employment, he became the Manager of the Department of Housing and Urban Development's ("HUD" or "agency") Richmond, Virginia office. However, on May 7, 1990, Mr. Thomas was demoted from Manager of the Richmond office, a GM–15 position, to Equal Opportunity Specialist in the agency's Philadelphia, Pennsylvania office, a GS–13 position. The demotion was based on charges of mismanagement and abuse of supervisory authority.

Mr. Thomas appealed the agency's action to the Board. Rather then defend its action, the agency entered into a settlement agreement with Thomas. The settlement agreement included a carefully crafted Memorandum of Understanding ("MOU"), spelling out in considerable detail Thomas's requirements regarding confidentiality and the creation of a "clean record." On September 7, 1990, the administrative judge entered the agreement into the record and dismissed the appeal as settled.

The MOU provided that, "[i]n consideration of the settlement agreement" executed that day, Thomas agreed to submit a "Request for Personnel Action," SF–52, containing his resignation for personal reasons as of September 6, 1992, two years hence. The parties also agreed that the MOU would not be filed with the Board or placed in the Thomas official personnel file. The settlement agreement provided that HUD would "rescind and cancel" Thomas's reduction in grade, and Thomas would withdraw his grievance.

With regard to confidentiality of the deal, the agreement provided that:

[N]o information will be provided by any [HUD] employee or official to any other person concerning this agreement or the reasons for Thomas' departure from HUD, or other adverse action, performance rating, or the terms of the settlement between Thomas and HUD; provided that HUD may release to suitable requesters the dates of Thomas' employment, the positions he held, and the fact that he resigned for personal reasons.

The settlement agreement further provided, *inter alia*, that all documentation relating to the relevant adverse action proposal and decision would be removed from Thomas's official personnel file, and that "there will be no reference, directly or indirectly, by coding or any other manner, to the fact that an adverse action was initiated or taken, that a Board appeal was filed, or that this settlement occurred."

Pursuant to the agreement, Thomas was restored to his original pay grade and awarded back pay and cost-of-living increases. He was then placed in a one year Intergovernmental Personnel Assignment ("IPA") with

Virginia State University. This IPA was later extended through September 5, 1992.

In the summer of 1992, as his IPA neared completion, Thomas contacted a Department of Justice ("DOJ") official about the possibility of continuing his employment with the Federal Government, and this official relayed the inquiry to another DOJ official, Kristine Marcy. Subsequently Ms. Marcy contacted Thomas, and the two discussed the possibility of his working at DOJ. After talking to Thomas, Ms. Marcy contacted her friend and former colleague, Leonora Guarraia, a HUD official. This contact began a series of events which caused the settlement agreement to begin to unravel, thereby resulting in the agency's breach.

According to Guarraia, she contacted James Walker, an Executive Officer in the Secretary's Office at HUD, to see whether he knew anything about Thomas. According to Walker, he told Guarraia that he knew Thomas, that Thomas had worked in congressional affairs at HUD, and that he saw him frequently then. He said that Thomas had been selected for the Manager position in Richmond, Virginia, and that there had been some problems there. Walker testified that he was trying to help Thomas get placed, but that "I didn't want [Guarraia] coming back and saying, well, you didn't tell me that." Guarraia then called Marcy to relay the information she obtained from Walker. According to Marcy, Guarraia told her that Thomas had been the subject of an Inspector General ("IG") matter.

Thomas contends that this was a breach of the agreement because the IG's investigation was used by the agency as a justification for recommending his demotion. We agree with Thomas's argument that Guarraia's disclosure to Marcy of the IG investigation clearly violated the specific prohibition against disclosing to requesters any information apart from the dates of Thomas's employment, the positions he held, and that he resigned for personal reasons. Thomas also contends, and we agree, that the conversation also violated the general non-disclosure provisions in both the Settlement Agreement and the Memorandum of Understanding prohibiting the dissemination of information concerning adverse actions taken by the agency against him.

At the end of Thomas's IPA with Virginia State University, he informed the agency that he was withdrawing his "Request for Personnel Action," a form labeled SF–52, which was submitted pursuant to the MOU in 1990. The agency refused to allow the withdrawal and processed the SF–52, effecting Thomas's separation from the agency on September 6, 1992. Thomas then filed another appeal to the Board, alleging that the agency acted improperly and illegally by not permitting him to withdraw his resignation. Thomas sought to withdraw his resignation and to rescind both the settlement agreement and the MOU.

The administrative judge in an initial decision dismissed the involuntary resignation appeal, and Thomas petitioned the full Board for review. In an Opinion and Order remanding the appeal, the Board held that: it has the authority to consider the validity of a pre-appeal settlement agreement so as to determine its effect on the personnel action before the Board; the MOU was in the nature of a pre-appeal settlement agreement and was a lawful waiver of a right in exchange for other rights; the agency has the burden to establish by preponderant evidence that it had a valid reason to refuse to accept Thomas's withdrawal of his resignation before its effective date; a breached or invalid MOU is not a valid reason for refusal to accept the withdrawal of his resignation; and Thomas was entitled to further discovery on the issue of whether the agency breached the MOU. The Board remanded the case to the AJ.

In the remand initial decision, the AJ held against Thomas, finding that the agency did not materially breach the MOU. Thomas petitioned the Board to review this decision, contending that the AJ erred in a variety of ways. The full Board modified and affirmed the initial decision, stating that the Settlement Agreement/MOU was still an enforceable contract, that Thomas was obligated to resign, and that the agency therefore had a valid reason for refusing to honor his withdrawal request. Thomas appeals from this final order.

## DISCUSSION

■ The question in this case is whether HUD, when it failed to comply with the express limits of the confidentiality provision of the MOU, materially breached the settlement agreement. The Board concluded that HUD had not, and, under 5 U.S.C. § 7703(c),

this court must affirm that decision unless that decision is arbitrary, capricious, an abuse of discretion, or unlawful; procedurally deficient; or unsupported by substantial evidence.

The Board found as a fact, and the evidence clearly supports that finding, that HUD breached the confidentiality provision of the MOU. As discussed above, Ms. Marcy of DOJ learned from a HUD official that petitioner had been the subject of an IG investigation. Because HUD was prohibited from releasing any adverse information and was only permitted to disclose "the dates of Thomas' employment, the positions he held, and the fact that he resigned for personal reasons," the agency clearly breached the confidentiality provisions of the MOU.

■ The Board, however, concluded that HUD's breach was not material. A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract. 5 Arthur L. Corbin, *Corbin on Contracts* § 1104 (1964). In this case, the agency's breach of the confidentiality provision is a matter of vital importance and goes to the essence of this contract. The agency's agreement to deny to potential future employers, including other agencies of the United States Government, the truth about Thomas's performance at HUD was the major benefit that Thomas received in exchange for agreeing to resign from his position. The Board gave credence to the after-the-fact testimony from the DOJ officials that their learning of the fact that Thomas had been the subject of an IG investigation would not influence their view of his employability. Even if that testimony were believed, that knowledge at a minimum would put a responsible employing official on inquiry notice, which was exactly what Thomas wanted to avoid.

■ The Board offered as an alternative ground that the language of the MOU—the limitations on HUD's disclosures were effective "[a]t and after the time of [Thomas's] resignation"—was ambiguous as to when the vow of silence took effect. The Board read it to mean not at the time Thomas submitted his resignation in 1990, but rather at the time it became effective in 1992. That reading makes little sense, since the purpose of the two year delay was to permit the agency to move Thomas out of the agency promptly while giving him a period of time to find other employment. If during that time the agency was free to broadcast the bad news, a large part of the purpose of the agreement would disappear. When a term of an agreement is ambiguous, and the Board was correct in so finding, the ambiguity should be resolved in a manner that is consistent with the purpose and effect of the agreement and with the intent of the parties.

It may well be that it is virtually impossible for agencies to ensure that settlement agreements such as this, requiring the whitewashing of an employee's disciplinary record, can be performed to the letter. Even if some agency officials are willing to palm off their problems on others, including sister agencies, without revealing the truth about an employee, there is always the risk that another person who knows the facts will not remain silent. Perhaps as a matter of sound governmental administration such agency agreements should be prohibited.

It is understandable, however, why employees who face disciplinary action would readily agree to such a settlement despite its risks. And one possible view of the matter could be that such an employee assumes the risk that, despite the agency's agreed efforts, someone will leak the information. When, however, the leak comes directly from a responsible official inside the agency in response to an inevitable inquiry from a potential employer, we cannot permit the agency that willingly entered into such an arrangement to breach it without being held responsible. To do so would be to condone what would be essentially an empty promise made by the government.

Because the breach of the settlement agreement is material, Thomas was discharged from his contractual duty to resign, and was entitled to withdraw his SF–52 "Request for Personnel Action." *See Restatement (Second) of Contracts* § 237 cmt. a (1979). *See, e.g., Tretchick v. Department of Transport.*, 109 F.3d 749, 751–52 (Fed.Cir. 1997) ("If the agreement is shown to be invalid or the agency is found to have breached the agreement, ... the agreement may not constitute a valid basis for the agency to refuse the employee's withdrawal."). *See also Scharf v. Department of Air Force*, 710 F.2d 1572, 1574–75 (Fed.Cir.1983). Thomas attempted to withdraw his resignation. Because the agency denied his attempt, the purported resignation became an involuntary

one, and the agency's action in processing his rescinded offer to resign constituted a removal. Unless the removal was carried out in compliance with applicable laws and regulations, it is unlawful and Thomas is entitled to the remedies provided by law. Since the Board dismissed Thomas's appeal on the grounds of a voluntary resignation, the matter is remanded to the Board for further action consistent with this opinion.

## CONCLUSION

The decision of the Board is reversed, and the matter is remanded to the Board.

*REVERSED & REMANDED.*