**Laura V. KING, Petitioner.**

v.

**DEPARTMENT OF THE NAVY, Respondent.**

No. 97–3298.

United States Court of Appeals, Federal Circuit.

Nov. 24, 1997.

Laura V. King, of Tracyton, Washington, pro se.

Dorann E. Banks, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director.

Before RICH, NEWMAN, and RADER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Laura V. King petitions for review of the decision of the Merit Systems Protection Board, Docket No. SE0752920328–C–1, dismissing her petition for enforcement of a settlement agreement with the United States Department of the Navy. We reverse the decision of the Board and remand for further proceedings.

## BACKGROUND

Before the Board, and in the briefs on appeal, Petitioner describes the circumstances leading to the settlement agreement as follows: She began her employment with the Navy in 1980 as a temporary GS–2 Clerk Typist and rose to the position of Security Specialist, GS–11, also earning the M.S. degree in systems management from the University of Southern California. Her difficulties began when she complained about pictures of scantily clad women and sexually offensive cartoons posted in her work environment. Petitioner states that the Navy did not correct the situation, despite some efforts in that direction, and retaliated against her when her complaints were repeated and she filed EEOC complaints. The Navy reduced her duties and responsibilities, and threatened to transfer her. Eventually these tensions were accompanied by physical illness and, on the advice of her physician, Petitioner did not come to work. The Navy denied Petitioner's requests to use her accumulated annual and sick leave, revoked her security clearance, and placed her on absent without leave status. Petitioner applied for worker's compensation, which the Navy opposed. The Navy re-

moved her from employment in June, 1992, on the ground of being absent without leave.

After Petitioner appealed to the Board, she and the Navy entered into a settlement agreement. The Navy agreed to "cancel the removal action of the appellant ... and remove all reference to the removal action from her Official Personnel File." The Navy agreed to treat her time lost due to illness as authorized leave, to change its records accordingly, and to pay her reasonable attorney fees up to $1200. Petitioner agreed to submit and the Navy agreed to process her voluntary resignation. The agreement was entered into the appeal record before the Board, and the appeal was dismissed.

Through a Freedom of Information Act inquiry, Petitioner learned that records with the Office of Personnel Management (OPM) and the Defense Finance and Accounting Service (DFAS) contain references to the removal action. Petitioner brought an action to enforce the settlement agreement. The Board accepted the government's position that the reference in the settlement agreement to Petitioner's "official personnel file" means only the personnel file in the possession of the Navy, and does not include the personnel files of OPM and DFAS. Thus the Board denied the Petition for Enforcement. This appeal followed.

### DISCUSSION

The Board's decision shall be sustained unless it is 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule or regulation having been followed; or 3) unsupported by substantial evidence. 5 U.S.C. § 7703(c).

■■■ The interpretation of a settlement agreement is an issue of law. *See Mays v. United States Postal Serv.*, 995 F.2d 1056, 1059 (Fed.Cir.1993) ("The settlement agreement is a contract, of course, and its interpretation is a matter of law."); *Greco v. Department of the Army*, 852 F.2d 558, 560 (Fed.Cir.1988). We review the Board's determinations of law for correctness, without deference to the Board's decision. *See Perry v. Department of the Army*, 992 F.2d 1575,

1578 (Fed.Cir.1993) ("The construction of [the disputed] term in the agreement is a question of law that this court reviews de novo.")

■■■ In interpreting a written agreement, we first ascertain whether the written understanding is clearly stated and was clearly understood by the parties. If ambiguity is found, or if ambiguity has arisen during performance of the agreement, the judicial role is to implement the intent of the parties at the time the agreement was made. In so doing the words used by the parties to express their agreement are given their ordinary meaning, unless it is established that the parties mutually intended and agreed to some alternative meaning. *Perry*, 992 F.2d at 1579; *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 351 F.2d 972, 976 (1965). The paramount focus is the intention of the parties at the time of contracting; that intention controls in any subsequent dispute. *Greco*, 852 F.2d at 560 ("Our task [in construing the settlement agreement] is to determine the intent of the parties at the time they contracted, as evidenced by the contract itself.")

When an employee voluntarily resigns in exchange for purging of the records that show the prior adverse action, the employee's goal, to which the agency has agreed, is to eliminate this information as it may affect future employment with the government or elsewhere. As was explained in *Thomas v. Department of Housing and Urban Development*, 124 F.3d 1439, 1442 (Fed.Cir.1997), "[t]he agency's agreement to deny to potential future employers, including other agencies of the United States Government, the truth about Thomas's performance at HUD was the major benefit that Thomas received in exchange for agreeing to resign from his position."

■■■ By correcting only those files in the hands of the Navy, and by retaining references in official government personnel files to the action that was subsequently revoked, Petitioner was denied the benefit of her agreement. Accepting that the Navy's agreement was made in good faith, continuance of that good faith now requires perfect-

ing that which was flawed. *See McCall v. United States Postal Serv.*, 839 F.2d 664, 667 (Fed.Cir.1988) ("We think it is implicit in the agreement here that the agency must abide by it in good faith.") Thus the Board erred in dismissing the petition for enforcement, for the Navy did not fulfill its agreed obligations.

The Navy relies on *Warren v. Department of the Navy*, 70 M.S.P.R. 677, 679–80 (1996), and *Fuller v. United States Postal Serv.*, 47 M.S.P.R. 211, 216, *aff'd*, 945 F.2d 417 (Fed. Cir.1991) (Table). Neither case supports the Board's ruling. In *Warren* the settlement agreement provided specifically for expungement of information about a removal action and the denial of a within-grade pay increase, but did not provide for expungement of information about a suspension; when Warren later attempted to have the information about the suspension expunged, the Board sustained the agency's refusal. In *Fuller* the alleged breach of the settlement agreement was the verbal communication of information that had been expunged from the personnel records; there was no issue of failure to expunge the records. Here, however, the information Petitioner seeks to have expunged is no more than what the government agreed to.

It appears to be undisputed that the mutual intent was to purge the personnel records that are officially kept and thus might be available to a future employer; no other reasonable meaning has been proposed. The settlement agreement applies to official personnel files where those files exist. It is highly unlikely that the parties bargained for the purging of only local personnel records, while the main personnel files at the Office of Personnel Management, as well as official files at DFAS, retain the undesired information. Although the government also argues that the Navy has no control over OPM or DFAS, and thus can not be held to have agreed that these agencies would expunge their files, there is no assertion that OPM and DFAS have refused to comply with the settlement agreement. We assume that they have not so refused, and thus do not reach the issue of the Navy's, or the Board's, au-

thority to enter into and to enforce this settlement agreement.

The decision denying Petitioner's enforcement petition is reversed. The case is remanded for further procedures consistent with this opinion.

Costs to Petitioner.

*REVERSED AND REMANDED.*