**William J. MUSICK, Petitioner,**

v.

**DEPARTMENT OF ENERGY, Respondent.**

No. 03–3064.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 12, 2003.

William J. Musick, of Spring Hill, FL, appearing pro se.

Kenneth S. Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were David M. Cohen, Director; and

Deborah A. Bynum, Assistant Director. Of counsel was William Peachey.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

Opinion for the court filed by Circuit Judge SCHALL, Dissenting opinion filed by Circuit Judge PAULINE NEWMAN.

SCHALL, Circuit Judge.

William J. Musick petitions for review of the final decision of the Merit Systems Protection Board ("Board") that denied his petition for enforcement of a settlement agreement with the Department of Energy ("agency"). *Musick v. Dep't of Energy*, 93 M.S.P.R. 23 (2002). We vacate and remand.

### BACKGROUND

Effective August 28, 1999, the agency removed Mr. Musick from his position as a Budget Analyst, GS–560–15, because he was unable to perform the duties of his position. On September 19, 1999, Mr. Musick filed an appeal with the Board challenging his removal. Around the same time, he applied for disability retirement, which was approved by the Office of Personnel Management ("OPM") on November 17, 1999.

Eventually, on January 7, 2000, Mr. Musick entered into a settlement agreement with the agency with respect to his Board appeal. In the settlement agreement, Mr. Musick agreed to the dismissal of his appeal with prejudice. He also agreed not to initiate any complaints, grievances, or civil lawsuits based upon, or relating to, his removal. In return, the agency agreed to pay Mr. Musick his salary, plus benefits, from the date of his removal to the date of the agency's last transmittal of the negotiated terms of the settlement agreement. The agency further agreed that:

3. In consideration of the aforementioned terms and the agreement not

to pursue any other actions based upon the facts in the MSPB appeal mentioned above, DOE agrees to remove all documentation relating to and culminating in Mr. Musick's removal, dating back to January 1998 where the Agency proposed to place Mr. Musick on enforced sick leave, and including all documentation proposing to remove Mr. Musick from his position from his Official Personnel File (OPF). DOE also agrees to replace the August 28, 1999 Removal action from his OPF and replace it with a Resignation action dated August 28, 1999. Both parties acknowledge that Mr. Musick's application for disability retirement was approved by the Office of Personnel Management in November 1999.

On January 11, 2000, the administrative judge ("AJ") accepted the parties' settlement agreement, entered it into the record for enforcement purposes, and dismissed Mr. Musick's appeal of his removal. *Musick v. Dep't of Energy*, No. DC–0752–99–0815 I 2 (M.S.P.B. Jan. 11, 2000).

A year and a half later, on July 9, 2001, Mr. Musick filed a petition for enforcement of the settlement agreement. In it, he alleged that the agency had breached the agreement by failing to remove all documents relating to his removal from its files, including his Official Personnel File ("OPF"), and by denying him access to agency facilities. The AJ ordered the agency to submit evidence of compliance with the settlement agreement. In response, the agency, through the statement and submission of Agency Representative Rochell Talley, asserted that it had complied with the agreement by removing from Mr. Musick's OPF all documentation relating to and culminating in his removal, dating back to January of 1998.

Ruling on Mr. Musick's petition, the AJ interpreted the settlement agreement as requiring that the agency remove all documents relating to and culminating in Mr. Musick's removal from his OPF only. *Musick v. Dep't of Energy*, No. DC–0752–99–0815–I–2 (M.S.P.B. Oct. 4, 2001). The AJ based his interpretation on the language of the agreement and therefore did not allow parol evidence to be admitted regarding the intent or understanding of the parties in forming the agreement. *Id.* As a result of his interpretation, and relying on the submission of Ms. Talley, the AJ concluded that the agency had complied with the settlement agreement by removing from Mr. Musick's OPF all documents relating to his removal. *Id.* The AJ also concluded that the settlement agreement did not require the agency to grant Mr. Musick access to its facilities. *Id.* Accordingly, the AJ held that Mr. Musick had not proven that the agency had breached the agreement. *Id.* He therefore denied the petition for enforcement. *Id.*

Mr. Musick timely filed a petition for review of the AJ's initial decision. On September 30, 2002, the Board issued a decision stating that the two Board Members could not agree on the disposition of the petition. *Musick*, 93 M.S.P.R. at 23. Therefore, the AJ's initial decision became the final decision of the Board. *Id.* Member Slavet issued a separate opinion, interpreting the language of the settlement agreement as requiring removal of documentation relating to or culminating in Mr. Musick's removal from all of the agency's files.[1] *Id.* at 24. In light of that interpretation, she concluded that the agency had materially breached the agreement by failing to remove materials relating to Mr. Musick's removal from its files. *Id.* at 31.

---

1. Member Slavet also stated that, assuming the agreement was unclear, the AJ erred in excluding parol evidence that would have es-

Mr. Musick now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

## ANALYSIS

 Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed.Cir.1998).

 On appeal, Mr. Musick makes two arguments. First, he refers to the fact that, in February of 2001, security personnel barred him from entering agency facilities. In that regard, he states that "[i]nstead of removing the documentation the security department was placed on high alert to prevent me from any access to the Department. (See attached memo to all security officials)." The memorandum to which Mr. Musick refers is dated February 6, 2001. It reads as follows:

Please notify all Protective Force members to be alert for the attempted access by WILLIAM J. MUSICK. MUSICK has resigned and returned his DOE badge to this office. If MUSICK attempts to enter a DOE Headquarters facility he is to be denied access. Should MUSICK have any questions reference [sic] his access denial he is [to] contact Labor Relations at 6–6603. The Protective Force is not required nor responsible for contacting Labor Relations.

tablished what the parties intended the settlement agreement to mean.

Mr. Musick appears to argue that the February 6, 2001 memorandum is a document that was maintained in his OPF in violation of the settlement agreement. This contention is without merit. As can be seen, the memorandum makes no mention of Mr. Musick's removal or any of the events leading up to it.

Second, Mr. Musick argues that Member Slavet correctly interpreted the settlement agreement as requiring the agency to remove related documents from all agency files and that she correctly concluded that the agency materially breached the agreement. The agency responds that the settlement agreement only required it to remove and amend documentation in Mr. Musick's OPF. The agency states that Mr. Musick's OPF was purged of all documentation regarding his removal in accordance with the settlement agreement.

■ A settlement agreement is a contract, the interpretation of which is a question of law. *See Greco v. Dep't of Army*, 852 F.2d 558, 560 (Fed.Cir.1988). In entering into the settlement agreement, Mr. Musick was represented by counsel, and he acknowledged that he was voluntarily agreeing to the agreement's terms and conditions. Paragraph 3 of the settlement agreement, which we quote above, provided that all documentation relating to and culminating in Mr. Musick's removal would be removed "from his Official Personnel File (OPF)." While paragraph 3 is poorly drafted, we believe the only reasonable reading of the paragraph is that the agency only obligated itself to remove pertinent material from Mr. Musick's OPF. Paragraph 3 specifies the material to be removed ("all documentation relating to and culminating in Mr. Musick's removal, dating back to January 1998 where the Agency proposed to place Mr. Musick on enforced sick leave, and including all documentation proposing to remove Mr. Musick from his position"). At the same

time, and most importantly, it identifies only one place from which the specified material is to be removed. That place is the OPF ("from his Official Personnel File"). In short, whatever deficiencies there may be in the wording of paragraph 3, as far as the issue before us is concerned, the paragraph is clear. The agency was only required to remove documentation from Mr. Musick's OPF.

*King v. Dep't of Navy*, 130 F.3d 1031 (Fed.Cir.1997), does not help Mr. Musick. In *King*, Laura King and the Department of the Navy entered into a settlement agreement relating to Ms. King's appeal of her removal. The agreement stated that the Navy agreed to "cancel the removal action of the appellant ... and remove all reference to the removal action from [Ms. King's] Official Personnel File." *Id.* at 1033. Subsequently, through a Freedom of Information Act inquiry, Ms. King learned that records of OPM and the Defense Finance and Accounting Service ("DFAS") contained references to the removal action. She thereafter brought an action to enforce the settlement agreement. The Board denied the petition after concluding that the reference in the settlement agreement to Ms. King's official personnel file meant only the personnel file in the possession of the Navy and did not include the personnel files of OPM and DFAS. *Id.* Ms. King appealed the Board's decision, and we reversed. We stated that, in entering into a settlement agreement like Ms. King's, "the employee's goal, to which the agency has agreed, is to eliminate th[e] information [related to the adverse action] as it may affect future employment with the government or elsewhere." *Id.* We concluded that "[b]y correcting only those files in the hands of the Navy, and by retaining references in official government personnel files to the action that was subsequently revoked, Petitioner was denied the benefit

of her agreement." *Id.* The critical difference between *King* and this case is that Mr. Musick has not alleged that records were maintained outside the agency in violation of the settlement agreement. For that reason, *King* does not help Mr. Musick.

■ There is one troublesome aspect to this case, however. In her separate opinion, upon which Mr. Musick relies, Member Slavet states: "Although the agency alleged that it properly removed all documents related to the appellant's removal from his OPF, the agency never asserted that it removed all documents related to the appellant's removal from its files, and it actually submitted a document which referred to the appellant's removal." *Musick*, 93 M.S.P.R. at 31. The document to which Member Slavet referred is Attachment 5 to Ms. Talley's submission. It is a one-page statement titled "Current Employment Record," and it pertains to Mr. Musick. The document refers to a "RE-MOVAL," a "RESIGNATION," and a "CANCELLATION," and opposite each entry is the date August 28, 1999. The document was submitted by the agency to the AJ in response to Mr. Musick's claim that he had been improperly denied access to agency premises. In Ms. Talley's submission, the agency pointed to the document as establishing "unacceptable behavior" on Mr. Musick's part that presented a "danger." As a result, the agency urged, it was appropriate for it to bar Mr. Musick from its facilities. In its brief in this court, the government did not address the question of whether the "Current Employ-

ment Record"—which clearly refers to Mr. Musick's removal, and which appears to be the kind of document that would be retained in an OPF—was an item that was retained in Mr. Musick's OPF, in violation of the settlement agreement. Neither does our review of the record provide an answer to the question. Under these circumstances, we conclude that the appropriate course is to vacate the decision of the Board and remand the case for a factual determination as to whether the "Current Employment Record," or any other document referring to Mr. Musick's removal, was retained in his OPF in violation of the settlement agreement.[2]

### CONCLUSION

For the foregoing reasons, the final decision of the Board is

*VACATED and REMANDED.*

PAULINE NEWMAN, Circuit Judge, dissenting.

I respectfully dissent. Mr. Musick and the Department of Energy negotiated a settlement agreement in which he agreed to resign and the agency agreed to purge the files of all information concerning his removal. The purpose was clear, and clearly understood: it was to protect the employee from having the record of his sullied past affect future employment opportunity. Although one may debate the wisdom of such agency agreement, it is not here at issue. What is at issue is the failure of the agency to comply with its

2. In its brief, the government states, "If this Court finds that [the agency] is required to purge additional documents that were not previously deemed to be within the scope of the settlement agreement, this Court should remand the appeal back to the board to resume the enforcement proceeding." To the extent there may be a question on remand as to what is encompassed by Mr. Musick's OPF,

we note that in *King* the court stated that, based on the Navy's agreement "to remove all reference to the removal action from [Ms. King's] Official Personnel File," it appeared "to be undisputed that the mutual intent was to purge the personnel records that are officially kept and thus might be available to a future employer." *King*, 130 F.3d at 1034.

part of the bargain. The settlement agreement states:

> 3. In consideration of the aforementioned terms and the agreement not to pursue any other actions based upon the facts in the MSPB appeal mentioned above, DOE agrees to remove all documentation relating to and culminating in Mr. Musick's removal, dating back to January 1998 where the Agency proposed to place Mr. Musick on enforced sick leave, and including all documentation proposing to remove Mr. Musick from his position from his Official Personnel File (OPF). DOE also agrees to replace the August 28, 1999 Removal action from his OPF and replace it with a Resignation action dated August 28, 1999....

The agency states that it purged the "Official" file kept in the National Archives and Records Center in St. Louis, but did not purge other files of the Department of Energy. The agency states that this is the only file that is required to be purged.

The unpurged information apparently continues to be provided to prospective employers. Board Member Slavet in dissent pointed out that the purge was not limited to the archived file, and that "there is no question that the agency's agreement to purge its records was a material term of the agreement." The agency refused to purge its files when the inadequacy of its compliance was pointed out by Mr. Musick, stating that these were not the "Official Personnel File."

The panel majority holds that the agency was obligated to do no more than purge what it calls the Official Personnel File, and that it is irrelevant whether the files that continue to be kept at the agency personnel office, or other site that a potential employer might contact, have been purged. It is conceded that the agency preserved these files unpurged; Mr. Musick says he has been unemployable for the past four years because of divulgation of damaging information in those files.

The record suggests that the agency views only one file as "Official." However, it is undisputed that other personnel files are maintained by the agency and at the employment location. The agency states that Mr. Musick's Official Personnel Folder was moved to the National Archives and Records Center on April 11, 2000, and that it was purged of the relevant documents "sometime around the settlement date" of January 7, 2000. The agency further states that any other files are not subject to the agreement, and need not be purged. However, all such files are included in the settlement obligation, as is made clear by the term "including" in the settlement agreement. It is undisputed that unpurged files remain at hand at the agency, that they contain the material that the government had agreed would be removed, and that the information therein was divulged.

Precedent makes clear that all personnel files maintained by the government must be purged. In *King v. Department of the Navy*, 130 F.3d 1031, 1032–34 (Fed.Cir. 1997), the Navy agreed to "remove all reference to the removal action from her Official Personnel File." Ms. King later learned that references to the removal action, although removed from the Navy's personnel files, still existed in the files of the Office of Personnel Management and the Defense Finance and Accounting Service. The Board held that the "reference in the settlement agreement to Petitioner's 'official personnel file' means only the personnel file in the possession of the Navy, and does not include the personnel files of OPM and DFAS." *Id.* at 1033. The Federal Circuit reversed, stating:

> When an employee voluntarily resigns in exchange for purging of the records that show the prior adverse action, the

employee's goal, to which the agency has agreed, is to eliminate this information as it may affect future employment with the government or elsewhere. As was explained in *Thomas v. Department of Housing and Urban Development*, 124 F.3d 1439, 1442 (Fed.Cir.1997), "the agency's agreement to deny to potential future employers, including other agencies of the United States Government, the truth about Thomas's performance at HUD was the major benefit that Thomas received in exchange for agreeing to resign from his position."

By correcting only those files in the hands of the Navy, and by retaining references in official government personnel files to the action that was subsequently revoked, Petitioner was denied the benefit of her agreement.

\* \* \*

Here, however, the information Petitioner seeks to have expunged is no more than what the government agreed to.

It appears to be undisputed that the mutual intent was to purge the personnel records that are officially kept and thus might be available to a future employer; no other reasonable meaning has been proposed. The settlement agreement applies to official personnel files where those files exist. It is highly unlikely that the parties bargained for the purging of only local personnel records, while the main personnel files at the Office of Personnel Management, as well as official files at DFAS, retain the undesired information.

*King*, 130 F.3d at 1033–34. This precedent is contravened by the panel majority's holding that the agency was not obligated to purge the agency personnel records that it retained.

In *King* the agreement stated that all reference to the removal action would be removed from her Official Personnel File, and the government interpreted this as meaning only the agency file and not also the OPM file. In Mr. Musick's case, the agreement contained the same provision, and the government interpreted this as meaning only the archived file and not any other agency files. The court in *King* clarified that when an agreement is made to resign in exchange for cleansing of adverse material from the official record, the intent of that agreement extends to all government personnel records that are officially kept, wherever those files exist. *See Id.* at 1034 ("It is highly unlikely that the parties bargained for the purging of only local personnel records, while the main personnel files at the Office of Personnel Management, as well as official files at DFAS, retain the undesired information."). In Mr. Musick's case, it is highly unlikely that the parties bargained for the purging of only the archived personnel records, while the local personnel records retain the undesired information. By purging only the archived file, Mr. Musick was denied the benefit of his agreement with the agency.

An agreement is construed in accordance with the understanding under which it was reached. In accordance with that understanding, it becomes irrelevant whether the records archived are designated within the government as the "Official Personnel File," as the government states. When the intention of the parties was to include all files kept by the government in its official capacity as employer, that intent must be implemented. The panel majority's remand for determination of whether any document referring to Mr. Musick's removal was retained in the designated Official Personnel File is not the answer, for it leaves Mr. Musick subject to the unpurged agency files. The issue is not the technical designation of which file is the "Official Personnel File," but whether

the parties intended that all files that were officially kept would be purged as agreed.