NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3276

SANDRA F. BARNETT,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

_____

DECIDED:  November 4, 2004

_____

Before MAYER, Chief Judge, LOURIE and DYK, Circuit Judges.

PER CURIAM.

Sandra F. Barnett appeals from the final decision of the Merit Systems Protection Board denying her petition for enforcement of a settlement agreement.  Barnett v. Dep't of Agric., No. AT-0752-02-0853-C-1 (M.S.P.B. March 10, 2004) ("Final Order").  We affirm.

BACKGROUND

Sandra F. Barnett was a Food Safety inspector, GS-7, for the Department of Agriculture, Food Safety and Inspection Service, Moselle, Mississippi ("the agency").  Barnett v. Dep't of Agric., No. AT-0752-02-0853-C-1 (M.S.P.B. Feb. 13, 2003).  Effective August 18, 2002, Barnett was removed from her position for allegedly failing to

report for duty as scheduled.  On September 9, 2002 she appealed her removal to the Merit Systems Protection Board.

On February 6, 2003, the Administrative Judge ("AJ") conducted a hearing on Barnett's appeal from the agency's action.  Id.  During the hearing, Barnett and the agency reached a settlement on the appeal.  Id.  The settlement agreement called for Barnett's resignation from the agency.  The agreement also required the agency to remove the Notice of Removal from Barnett's official personnel file.  With respect to confidentiality, the agreement provided that:  "[T]he settlement agreement will not be discussed with, disclosed or released to anyone who does not need the information to implement the agreement. . . ."

On February 18, 2003, Barnett filed an appeal at the Board accusing the agency of breaching the settlement agreement.  Barnett v. Dep't of Agric., No. AT-0752-02-0853-C-1, slip op. at 1 (M.S.P.B. June 10, 2003) ("Initial Decision").  Barnett contended that the agency materially breached the agreement by failing to keep the terms of the agreement confidential.  She asserted that unauthorized agency employees were informed of the settlement agreement.

The AJ determined that several agency employees present at Barnett's February 6, 2003 hearing were informed of a possible settlement agreement between Barnett and the agency.  Id. at 3.  An affidavit from Barbara Cooley, one of the agency employees present at the hearing, testified:

> Dr. Calloway . . . said that they were "compromising."  I took that to mean Sandra [the appellant] and the agency were coming to an agreement.  Later, I recalled that Joyce, Dr. Calloway and I were in the room when Dr. deMola made the comment that he had offered to let her sign that she would resign in place of the discharge. . . . Dr. deMola didn't say

anything about whether she actually signed or that the information was confidential and should not be shared with anyone. . . .

Id. at 3-4. Neither party disputes that within the following day, Ms. Cooley informed other individuals in the agency of the settlement itself. Id. at 4.

With respect to materiality, Barnett argued that the confidentiality provision was "of vital importance" because she wanted to protect the agency workforce from allegedly "intolerable" working conditions. Id. at 5. By continuing with the February 6, 2003 hearing, Barnett speculated that she could have improved the working environment "by showing the consequences of what was occurring in the [agency]." Id. Barnett claimed that she sought to keep the agreement confidential because "she felt she let employees in the plant down when she signed the agreement." Id.

The agency argued that it did not intentionally violate the settlement agreement because Ms. Cooley was not specifically told of the settlement terms. Id. at 4. The AJ found the question of intent irrelevant because the mere act of "re-telling . . . one of the settlement terms is the gravamen of the violation." Id. Accordingly, the AJ held that Ms. Cooley's communication of the settlement to other agency employees breached the agreement's confidentiality provision. Id.

The AJ determined, however, that the agency's breach of the confidentiality provision was not material. Id. at 6. The AJ recognized that under the terms of the agreement, Barnett was not going to return to the agency. Id. According to the AJ, as far as the other agency employees knew, only one of two things could have happened to Barnett after the February 6, 2003 hearing: her removal was upheld or she entered into a settlement agreement. Id. Under either circumstance, nondisclosure of the settlement terms in the workplace would not have furthered Barnett's stated reason why

04-3276                                    -3-

the confidentiality provision was "of vital importance," i.e., to protect the workforce. Id. at 6. On the contrary, the AJ posited that the disclosure of the settlement arguably conveyed that Barnett had achieved some measure of relief regarding her claims. Id.

The AJ also determined that the purpose of the settlement agreement was to allow Barnett to apply for other employment with a clean record. Id. To support that finding, the AJ relied on "[t]he face of the agreement, as well as the pre-settlement discussions to which the administrative judge were privy." Id. Moreover, the AJ found no settlement provision indicating Barnett's desire to "protect other employees." Id. Accordingly, the AJ held that the agency's disclosure of the settlement agreement to its employees did not defeat the purpose of the confidentiality term.

Barnett petitioned the full Board for review of the Initial Decision. Concluding that there was no new, previously unavailable evidence and that the AJ made no error in law or regulation that affected the outcome of the appeal, the Board denied Barnett's petition, rendering the Initial Decision final. Final Order, slip op. at 1-2.

Barnett timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

                                    DISCUSSION

Congress has expressly limited the scope of our review in an appeal from the Board. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); Ellison v. Merit Sys. Prot. Bd., 7 F.3d 1031, 1034 (Fed. Cir. 1993). "Under the substantial evidence standard

04-3276                              -4-

of review, a court will not overturn an agency decision if it is supported by 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jacobs v. Dep't of Justice, 35 F.3d 1543, 1546 (Fed. Cir. 1994) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 299 (1938)). Moreover, the Supreme Court has explained that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

On appeal, Barnett makes two primary arguments. First, Barnett asserts that the Board failed to consider the agency's explicit representation that union president Joyce Massey and Barnett's supervisor, William Calloway, would not be informed of the settlement agreement. Barnett appears to argue that the agency's breach was material because she would not have signed the settlement agreement if she knew that the agency would inform those particular individuals of the agreement.

Barnett also argues that the disclosed settlement agreement will hinder future attempts to improve the working conditions at the agency. Barnett speculates that the disclosed agreement will discourage other employees from attempting to improve the working conditions at the Food Safety and Inspection Service in Moselle, Mississippi. To support her belief, Barnett cites the tenure of her employment at Moselle and the resignations of other employees, but otherwise fails to explain how the disclosure of the agreement will hinder future attempts to improve working conditions in Moselle with any particularity.

We conclude that the Board did not err in determining that the agency did not materially breach the settlement agreement. The agency does not dispute that it

breached the agreement. Instead, the agency argues that Barnett has not identified any evidence proving that the breach was material. In its opposition brief, the agency relies on many of the AJ's prior determinations to support its arguments. As the AJ previously determined, the agency argues that the purpose of the confidentiality provision was to allow Barnett to seek other employment without the stigma of removal. And nothing in the record indicates that the limited disclosures shown here precluded Barnett from obtaining other employment. The agency also cites the lack of evidence regarding how the subsequent disclosure of the agreement was prejudicial to Barnett's personal motivation of improving the workplace.

In Thomas v. HUD, 124 F.3d 1439 (Fed. Cir. 1997), we stated that "[a] breach is material when it relates to a matter of vital importance, or goes to the essence of the contract." Id. at 1442 (citing 5 Arthur L. Corbin, Corbin on Contracts § 1104 (1964)). There is substantial evidence that the breach here does not "relate to a matter of vital importance, or goes to the essence of the contract." The agency is correct that Barnett has not provided any evidence of material breach. Moreover, substantial evidence supports the AJ's finding that the purpose of the settlement was to allow Barnett to apply for other employment with "a clean record," i.e., pre-settlement discussions. Initial Decision, slip op. at 6. In addition, we agree with the AJ that the settlement agreement itself does not evince the intent to "protect other employees." Id. at 5. The settlement agreement itself stipulates that "this settlement is non-precedential and may not be cited for any reason, including comparison, in any other proceeding in any forum." Because we conclude that the agreement does not evince the intent to protect other employees, we need not decide whether such a provision would be enforceable by an employee

04-3276 -6-

who is not personally affected by the alleged breach. Accordingly, the Board's holding that the breach of the confidentiality provision of the settlement contract was not material is supported by substantial evidence and was not contrary to law.

We have considered Barnett's remaining arguments and find them unconvincing.

## CONCLUSION

For the foregoing reasons, we affirm the Board's decision.