NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3198

ROGER M. BENFIELD,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Roger M. Benfield, of Alexandria, Virginia, pro se.

Christopher L. Krafchek, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director.

Appealed from:  Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3198

ROGER M. BENFIELD,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Petition for review of the Merit Systems Protection Board in DC0752080197-C-1.

_____

DECIDED: October 9, 2009

_____

Before MAYER, LINN, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

Roger M. Benfield ("Benfield") appeals a final decision of the Merit Systems Protection Board ("Board"), denying his petition for review and adopting the initial decision of the administrative judge ("AJ").  <u>Benfield v. Dep't of the Army</u>, 111 M.S.P.R. 310 (2009) (unpublished table decision) ("<u>Board Op.</u>").  The AJ's initial decision denied Benfield's petition for enforcement of a settlement agreement resolving his removal appeal.  <u>Benfield v. Dep't of the Army</u>, No. DC0752080197-C-1, slip. op. (M.S.P.B. Dec. 30, 2008) ("<u>AJ Op.</u>").  Because the Board's decision was supported by substantial

evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm.

Benfield worked as a Visual Information Specialist at the United States Army Management Staff College ("AMSC") located at Fort Belvoir, Virginia, beginning in 1991. On September 26, 2007, AMSC's Facilities Manager, Stephen Wade, reported that Benfield threatened to "shoot" or "blow out the brains" of four specifically identified AMSC employees. The Fort Belvoir Office of the Provost Marshall initiated a criminal investigation. On September 28, 2007, the installation commander, Colonel Brian W. Lauritzen, issued an order barring Benfield from entering the Fort Belvoir Military Installation pursuant to 50 U.S.C. § 797 (2006) ("Bar Order"). In addition, Steve T. Wilberger, AMSC Deputy Commandant, issued a Notice of Proposed Removal for causing a disruption of the workplace. After considering Benfield's oral and written replies, Garland H. Williams, AMSC Commandant, issued a written opinion removing Benfield from his position. Pursuant to this decision, Benfield received a Standard Form 50, Notification of Personnel Action ("SF-50") removing him from employment effective November 20, 2007.

Benfield appealed his removal to the Board on January 4, 2008. With the participation of the AJ, the parties engaged in settlement negotiations. On March 10, 2008, the parties signed a settlement agreement ("Settlement Agreement"), which the AJ entered into the record in his initial decision. Benfield v. Dep't of the Army, No. DC0752080197-I-1, slip. op. (M.S.P.B. Mar. 14, 2008). The AJ reviewed the Settlement Agreement finding that it was lawful on its face, that it was freely reached by the parties, and that the parties understood its terms. Id.

The Settlement Agreement required Benfield to withdraw his removal appeal and complete a behavioral counseling program. Upon Benfield's successful completion of this program, the Army was required to: (1) "rescind [Benfield's] SF-50 indicating removal for cause from his official personnel records and replace it with an SF-50 indicating resignation for personal reasons effective on the same date as the removal"; (2) "expunge from [Benfield's] personnel file any and all related documentation stating that [Benfield] was removed for cause"; and (3) "provide a neutral employment reference to potential employers." Id.

On July 9, 2009, the Army emailed Benfield stating that it had appropriately purged his physical and electronic official personnel file, replaced the SF-50 with an SF-50 indicating resignation rather than removal, and directed management staff to provide a neutral employment reference to any potential employer calling concerning Benfield. Benfield does not dispute these facts.

Benfield alleges that the Army's actions were not enough to fulfill its obligations under the Settlement Agreement. After signing the Settlement Agreement, Benfield made two requests that the Army terminate the Bar Order. Neither request referred to the Settlement Agreement. Both requests were denied. Benfield also submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), request to the Fort Belvoir Office of the Staff Judge Advocate, Criminal Law Division ("OSJA") seeking "any and all" information relating to the Bar Order. The Fort Belvoir Records Management Division responded to Benfield's FOIA request with responsive documents on September 23, 2008. These documents were taken from the OSJA's litigation file as well as criminal investigation files maintained at the Office of the Provost Marshall.

On November 14, 2008, Benfield filed a petition for enforcement of the Settlement Agreement, alleging that the Army had breached the agreement's terms by refusing to terminate the Bar Order and by retaining documents in the OSJA files referencing his removal. On December 30, 2008, the AJ denied Benfield's petition. AJ Op. at 7. The AJ determined that the Army had fulfilled its obligations under the Settlement Agreement, which did not require the Army to lift the Bar Order or to remove documents other than those in his personnel file referring to his removal. Id. at 4-6. The Board adopted the AJ's initial decision, concluding that there was no new, previously unavailable evidence and that the AJ made no error in law or regulation that affected the outcome. Board Op. at 1.

This court's review of a decision of the Board is limited by statute. Under 5 U.S.C. § 7703(c) (2006), this court is bound by a decision of the Board unless we find it arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law; or unsupported by substantial evidence. See, e.g., Carr v. Social Security Admin., 185 F.3d 1318, 1321 (Fed. Cir. 1999). The interpretation of the terms of a settlement agreement is a question of law which we review without deference. King v. Dep't of Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997).

In his informal brief, Benfield challenges the AJ's decision in several respects, all relating to his argument that the AJ erred in interpreting the Settlement Agreement. This argument is without merit. The AJ properly concluded that the Settlement Agreement plainly and unambiguously set out the obligations of the Army and that those obligations had been fulfilled. As explained by the AJ, the Settlement Agreement does not require the Army to terminate the Bar Order because it is contrary to the plain

language of the agreement and because during negotiations the Bar Order was addressed, discussed, and specifically excluded from the Settlement Agreement. AJ Op. at 5.

Benfield relies on King v. Department of Navy, to argue that the Army's obligations to purge files of any reference to Benfield's removal extended to all existing files of the Army, not just Benfield's personnel file. In King we interpreted a settlement agreement containing the phrase "remove all reference to the removal action from her Official Personnel File" as requiring the Navy to purge documents from any official Government personnel files that may affect future employment, including those held in personnel files by agencies other than the Navy. 130 F.3d at 1033-34. King does not apply here. The documents Benfield cites as a breach of the Settlement Agreement are located in litigation files in Fort Belvoir's legal office, not in any official personnel file. They are maintained for internal use by the Army's legal staff and their availability is limited. Unlike the documents in King, none of the documents cited by Benfield would affect his future employment in the Government or elsewhere because they would not be available to prospective employers. Thus, there is no reason to interpret the clear language of the Settlement Agreement to include the removal of documents from files other than the Army's physical and online personnel files for Benfield, which the Army has already properly purged.

Benfield alternatively argues that the Settlement Agreement is invalid. We understand him to argue that the AJ should have found the Settlement Agreement invalid based upon evidence Benfield received in his FOIA request indicating that one of the witness statements taken during his investigation contained a misstatement

concerning the location where Benfield allegedly made the threatening remarks. Benfield appears to suggest that this misstatement was a crime and therefore the Settlement Agreement was obtained fraudulently and should be invalidated. The AJ questioned the propriety of Benfield's attack on the validity of the Settlement Agreement in this enforcement proceeding. AJ Op. at 7 n.*. We need not reach this procedural issue, however, because even if Benfield's attack were proper in this proceeding, he has failed to articulate any basis on which it could be sustained. A party challenging the validity of a Settlement Agreement bears the "heavy burden" of showing that the contract "is tainted with invalidity, either by fraud practiced upon [the petitioner] or by a mutual mistake under which both parties acted." Asberry v. U.S. Postal Serv., 692 F.2d 1378, 1380 (Fed. Cir. 1982) (quoting Callen v. Pa. R.R. Co., 332 U.S. 625, 630 (1948)). Benfield fails to meet this heavy burden. He provided no evidence that the apparently minor witness misstatement had any effect, fraudulent or otherwise, on the Settlement Agreement's procurement.

For the foregoing reasons, the Board's decision is affirmed.

COSTS

No costs.