# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 10, 2011               Decided July 8, 2011

No. 10-5244

RICHARD AMERICA,
APPELLANT

v.

KAREN G. MILLS, ADMINISTRATOR, SMALL BUSINESS
ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:03-cv-01807)

*Richard A. Salzman* argued the cause for appellant. With him on the briefs was *Douglas B. Huron*. *Elizabeth A. Grdina* entered an appearance.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: HENDERSON, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* HENDERSON joins.

Dissenting opinion filed by *Circuit Judge* BROWN.

KAVANAUGH, *Circuit Judge*: Richard America charged his former employer, the Small Business Administration, with discrimination. America and the SBA then settled. Under the settlement agreement, America received $92,500 from the SBA. The settlement agreement also required the SBA to provide neutral references when potential employers inquired about America. America claims that the SBA materially breached that requirement of the settlement agreement. America sued the SBA in the United States District Court. After a bench trial, the District Court found no material breach and granted judgment for the SBA. We affirm.

\* \* \*

Richard America worked in Rural Affairs for the Small Business Administration. In 1995, the SBA decided to re-assign his position from Washington, D.C., to Kansas City, Missouri. America resisted the transfer and eventually accepted an early retirement in 1997, three days before he would have been fired for failing to report to Kansas City.

America then filed several administrative complaints alleging that the SBA engaged in race, sex, and age discrimination with respect to the attempted transfer. In 1998, America and the SBA settled their dispute. America dropped his claims in return for $92,500. As part of the settlement agreement, the SBA expunged references to America's retirement from his personnel file. The SBA also agreed to refer all inquiries about America from prospective employers to Human Resources; the purpose of that requirement was "to

ensure that the SBA provided only neutral references about him." *America v. Mills*, 714 F. Supp. 2d 88, 101 (D.D.C. 2010).

After signing the settlement agreement, America expected to find quick success on the job market. He didn't. He came to suspect the SBA was saying negative things about him to potential employers, in violation of the settlement agreement.

In 2000 and 2002, America hired a reference-checking company known as Documented Reference Check to contact three individuals at the SBA and pretend to be a potential employer asking about America. America believed that the subsequent reports of Documented Reference Check's conversations with those SBA employees showed a material breach of the settlement agreement. America therefore sued the SBA in District Court.

After a bench trial, the District Court found that America failed to prove that the reports from Documented Reference Check were "a totally accurate transcription of [the] phone calls." *Id.* at 99. The District Court reached that conclusion in part because Documented Reference Check's chief service officer gave testimony that the court found "completely incredible." According to the District Court, this key witness was "evasive and belligerent." He "made unreasonable assertions of privacy and trade secrets regarding such straightforward facts as the company's size and corporate structure." He was "in a position to change a report without the knowledge of the person who created the report" and may have had an incentive to satisfy clients by altering reports to contain negative references. *Id.* at 98.

4

There was only one relevant exception to the District Court's broad factual conclusion that SBA employees did not make the allegedly negative statements. The District Court found that SBA employee Arnold Rosenthal told Documented Reference Check that there was "an internal battle going on with [America's] transfer." *See id.* at 97, 99. But the District Court concluded that this one statement did not constitute a material breach of the settlement agreement. We agree. It is undisputed on appeal that Rosenthal made numerous unequivocally positive statements to Documented Reference Check. Rosenthal's overall description of America was quite positive, and at worst neutral. Rosenthal's (at worst) neutral reference about America thus does not constitute a *material* breach of the settlement agreement, the purpose of which was to ensure neutral references about America. Even under the materiality standard proposed by America, a breach is material only if it "relates to a matter of vital importance." *Thomas v. HUD*, 124 F.3d 1439, 1442 (Fed. Cir. 1997). America has not met that standard.

In short, although Rosenthal's comments may have constituted a breach because he did not simply refer the caller to Human Resources, we agree with the District Court that the breach was not material because Rosenthal's description of America was positive or, at worst, neutral.[1]

---

[1] In proceedings before the Equal Employment Opportunity Commission, the SBA conceded breach but retracted that concession about three weeks later. America argues that the SBA should be bound to that original concession. But the SBA's withdrawal is reasonable even under the standard proposed by America because the concession was withdrawn within "weeks, not years." *Mazaleski v. Treusdell*, 562 F.2d 701, 720 (D.C. Cir. 1977).

5

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*

BROWN, J., dissenting. The district court's unchallenged findings of fact are incompatible with its conclusion that the Small Business Administration did not materially breach its settlement agreement with Richard America. Therefore, I respectfully dissent.

To get America to drop his discrimination and retaliation claims, SBA agreed to refer "all inquiries from prospective employers" to Human Resources. The purpose of this agreement was, the district court found, "to ensure that the SBA provided only neutral references." *America v. Mills*, 714 F. Supp. 2d 88, 101 (D.D.C. 2010). An SBA employee therefore materially breaches the agreement when he responds to a reference inquiry in a way that casts America in a negative light. As the district court put it, SBA's breach was material if it "led to the provision of reference information that was not neutral and prejudiced [America] in his search for employment." *Id.*

The district court made a series of findings that lead inevitably to the conclusion that SBA's breach was material. First, the district court explicitly credited a reference checker's transcription of SBA comments concerning "the circumstances surrounding Mr. America's proposed transfer to Kansas City, the fact that he did not report there, [and] the internal battle over Mr. America's proposed transfer." *Id.* at 99. Among other comments to that effect were those of SBA executive Arnold Rosenthal. Rosenthal told the caller that "[t]here was an internal battle going on with [America's] transfer" and that this "was a difficult experience for him." The district court found such comments "had to have occurred," because they involve "significant details about the SBA and Mr. America's employment there that no one at [the reference-checking company] could have known without speaking to people at SBA." *Id.* The district court further

2

found these specific comments by Rosenthal to be "negative statements." *Id.* at 97. America had been forced to retire when he refused to accept the transfer, so he had good reason to keep that information from prospective employers.

These findings of fact are irreconcilable with the district court's conclusion that SBA's breach was immaterial. The district court tried to make sense of that conclusion by holding, "Rosenthal's reference to the 'difficult experience' that [sic—should read "of"?] the 'internal battle' over Mr. America's possible transfer to Kansas City was not a matter of 'vital importance,' and did not 'frustrate substantially' the purpose of the contract." *Id.* at 102 (citation and alteration omitted). This reasoning is flawed. Given the district court's own findings that these statements were negative, *id.* at 97, and that the purpose of the contract was to prevent negative references, *id.* at 101, SBA's breach necessarily "[went] to the essence and frustrate[d] substantially the purpose for which the [settlement] was agreed to." *Draim v. Virtual Geosatellite Holdings, Inc.*, 522 F.3d 452, 454–55 (D.C. Cir. 2008).

My colleagues agree with the district court that SBA's breach was immaterial, because they find Rosenthal's positive statements were more "numerous" than his negative ones. Maj. Op. at 4. This reasoning undermines the purpose of the settlement agreement. The requirement that a former employer refer all employment inquiries to Human Resources is a dead letter if he may avoid material breach by simply pairing every negative statement he utters with a positive one. As anyone with hiring experience can attest, employment references—especially references for the management-level positions America sought—are more art than science. Just a hint of negativity may be all it takes to warn a savvy employer away from a prospective employee. America reasonably hoped to avoid the risk of such value judgments

3

by insisting that all inquiries be directed to Human Resources, which could make only objective statements about his employment history. "The judicial task in construing a contract is to give effect to the mutual intentions of the parties." *Mesa Air Group v. DOT*, 87 F.3d 498, 503 (D.C. Cir. 1996); *see Lankford v. Platte Iron Works Co.*, 235 U.S. 461, 488 (1915). The court's interpretation violates this principle and renders SBA's agreement with America practically unenforceable.

This case illustrates the pitfalls of including a non-disparagement clause in a settlement agreement between a government agency and its former employee. Memories fade, and the difficulty of ensuring the agency's personnel abide by the agreement grows with every passing year. There are good reasons not to enter into such contracts in the first place. But a deal's a deal. Because I believe SBA materially breached its settlement agreement with America, I would reverse the judgment of the district court with instructions to reinstate America's Title VII suit.