# United States Court of Appeals for the Federal Circuit

06-3154

MICHAEL J. LUTZ,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Robert B. June, Law Offices of Robert June, P.C., of Ypsilanti, Michigan, argued for petitioner.

David G. Karro, Attorney, Law Department Civil Practice, United States Postal Service, of Washington, DC, argued for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC., and Lori J. Dym, Chief Counsel, Law Department Civil Practice, United States Postal Service, of Washington, DC. Of counsel were Franklin E. White, Jr., Assistant Director, and Sean McNamara, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

06-3154

MICHAEL J. LUTZ,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

DECIDED:  May 15, 2007

Before LOURIE, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Michael J. Lutz petitions for review of the final decision of the Merit Systems Protection Board ("Board") that denied his petition for enforcement of a settlement agreement between himself and the Unites States Postal Service ("agency").  <u>Lutz v. U.S. Postal Serv.</u>, No. CH-0752-03-0220-X-1 (M.S.P.B. Dec. 9, 2005) ("<u>Final Decision</u>"). We reverse and remand.

BACKGROUND

I.

Mr. Lutz was an EAS-15 Postmaster, employed by the agency at its Pleasant, Michigan, post office. In December of 2002, he was removed from the position of Postmaster, was demoted to the position of PS-4 Mailhandler, and was assigned to the Ann Arbor, Michigan, post office. This action followed the Postal District Manager's review of a proposal to fire Mr. Lutz based upon charges of failure to perform his assigned duties and misconduct.

Mr. Lutz appealed the agency's action to the Board. Thereafter, on April 22, 2003, he and the agency negotiated a settlement resolving the appeal. The settlement agreement, which was made part of the record for enforcement purposes, Lutz v. U.S. Postal Serv., No. CH-0752-03-02200-I-1 (M.S.P.B. Apr. 22, 2003), states in relevant part as follows:

> Within 30 days of the date this Settlement Agreement is fully executed, Appellant agrees to take all necessary steps to apply for disability retirement with [the Office of Personnel Management]. The Agency agrees to take all necessary steps to cooperate and facilitate the acceptance of Appellant's application and agrees not to place negative statements in the supervisor statement.

Settlement Agreement, ¶ 3c; Final Decision, slip op. at 2.

In accordance with the settlement agreement, Mr. Lutz applied for disability retirement with the Office of Personnel Management ("OPM"). The Postmaster of the Ann Arbor post office submitted a supervisor's statement to OPM in connection with the application. The supervisor's statement included the following statements regarding Mr. Lutz:

Refused to work in his position as a mail handler. Brought in documentation from Dr. was sent to Fitness for Duty [("FFD")] and was found fit for duty. Refused to work still.

. . . .

Sent to FFD [Fitness for Duty] and was found to have no issues. He however refused to work and claimed an accident.

. . . .

He supposedly hurt his back when working on carrier routed flats. This then resulted in lifting restriction which we would have kept. However he did not return to work due to other issues with MSPB settlements.

Supervisor's Statement, p. 2; Final Decision, slip op. at 3.

By letter dated February 19, 2004, OPM denied Mr. Lutz's application for disability retirement. The letter stated, inter alia:

Your supervisor documents a deficiency in your performance and attendance as of January 2003. He noted that you refused to work in your position, and that you were sent to fitness for duty and found fit for full duty. He also noted that you had a lifting restriction which the Post Office would have kept, but you have not returned to work due to other issues with MSPB settlements. The medical evidence submitted also does not establish that your medical condition warrants continued restrictions from performing the critical or essential duties of your position, or exclusion from the workplace, altogether.

. . . .

In summary, the evidence submitted does not establish that you have a disabling medical condition, and we cannot conclude from the documentation presented that you are disabled for useful and efficient service or that a continued absence from the work site is medically warranted. Thus, your request for disability retirement has been denied.

OPM Determination Letter, pp. 2-3 (Feb. 19, 2004).

II.

Mr. Lutz petitioned for enforcement of the settlement agreement, claiming that the agency was in breach of the agreement by including negative remarks in the supervisor's statement submitted to OPM in support of the application for disability

06-3154                                    3

retirement.[1] On May 6, 2004, the administrative judge ("AJ") assigned to the case determined that the agency had breached the settlement agreement by including negative remarks in the supervisor's statement. The AJ recommended that the Board order rescission of the settlement agreement and remand the case to the AJ for an adjudication of the agency's removal/demotion action. Lutz v. U.S. Postal Serv., No. CH-0752-03-02200-C-1 (M.S.P.B. May 6, 2004) ("AJ's Decision").[2]

The government filed a brief disagreeing with the AJ's recommendation, urging that the AJ erred when she found that the agency's breach was material. The Board agreed, holding that even if the agency had breached the settlement agreement by including negative remarks in the supervisor's statement—a determination the Board found it unnecessary to reach—any breach by the agency was not material because it did not affect the award of disability retirement benefits. Final Decision, slip. op at 3-4. The Board concluded that OPM's denial of Mr. Lutz's application was based on his failure to supply OPM with any relevant and credible medical records establishing his

[1] Mr. Lutz petitioned for enforcement on January 5, 2004, before OPM's denial of his disability application.

[2] The Board has jurisdiction to enforce a settlement agreement if the underlying appeal is within the Board's jurisdiction and the settlement was entered into the record. See 5 C.F.R. §§ 1201.181-.183; Rivas v. U.S. Postal Serv., 72 M.S.P.R. 383, 388 (1996). When one party breaches a settlement agreement, the other party is entitled to have the Board either enforce the agreement or rescind the agreement and reinstate its original claim. Murphy v. U.S. Postal Serv., 54 M.S.P.R. 202, 206 (1992). On a petition for enforcement of a settlement agreement, if the AJ finds that the alleged noncomplying party has failed to take an action required under the agreement, he or she will issue a recommendation containing findings, a statement of the actions required by the party to be in compliance with the agreement, and a recommendation that the Board enforce the agreement. See 5 C.F.R. § 1201.183(a)(5). The Board will consider the AJ's recommendation, the submissions of the parties, and additionally may hold a hearing, prior to issuing a final decision on the petition for enforcement. Id. § 1201.183(b).

disability, and that OPM would have denied the application regardless of any allegedly negative remarks contained in the supervisor's statement.  Id. at 4.  Accordingly, the Board dismissed the petition for enforcement.  Id.

Mr. Lutz now appeals the decision of the Board.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

I.

Our scope of review in an appeal from a decision of the Board is limited. Specifically, we must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence.  5 U.S.C. § 7703(c); Yates v. Merit Sys. Prot. Bd., 145 F.3d 1480, 1483 (Fed. Cir. 1998).

Mr. Lutz argues that the statements in the supervisor's statement were clearly negative and that their inclusion in the statement was a breach of the settlement agreement.  He further argues that the Board abused its discretion by holding that the agency's breach was not material.  He urges that the materiality of the negative statements is evident from the fact that OPM cited the statements in support of its denial of his application for disability retirement.  The government counters that the Board was entitled to find that OPM rejected Mr. Lutz's application because he failed to provide evidence that he was disabled.  Therefore, the government argues, the statements in the supervisor's statement were immaterial because they did not affect the success of Mr. Lutz's application.  Finally, the government urges that if the Board is held to have

erred in finding the remarks in the supervisor's statement immaterial, the case must be remanded to the Board for it to consider the question it bypassed—whether the statements constituted a breach of the agreement.

## II.

"A settlement agreement is a contract, and its construction is a question of law which this court reviews de novo." Lary v. U.S. Postal Serv., 472 F.3d 1363, 1367 (Fed. Cir. 2006) (quoting Conant v. Office of Pers. Mgmt., 255 F.3d 1371, 1376 (Fed. Cir. 2001)).  In order to prevail, Mr. Lutz must show material non-compliance by the agency with the terms of the settlement agreement.  See Gilbert v. Dep't of Justice, 334 F.3d 1065, 1071 (Fed. Cir. 2003) ("A party breaches a contract when it is in material non-compliance with the terms of the contract.").  While the question of whether a breach of contract is material is a mixed question of law and fact, where, as here, the facts are undisputed the determination of whether there has been material non-compliance with the terms of a contract necessarily reduces to a question of law.  Lary, 472 F.3d at 1367 (citing Gilbert, 334 F.3d at 1071-72).[3]

The agency explicitly agreed "not to place negative statements in the supervisor statement."  Settlement Agreement, ¶ 3c.  However, the statements the agency included in the supervisor's statement are indisputably negative in tone, asserting that Mr. Lutz "refused" to work his position.  Furthermore, the statements are rife with innuendo, stating that Mr. Lutz "claimed" an accident and "supposedly" hurt his back.  In short, they imply that Mr. Lutz has no medical issues and was less than truthful in his

---

[3]     Thus, a remand to determine whether the supervisor's statements constituted a material breach of the settlement agreement is not necessary.

disability claims. Under the terms of the settlement agreement, the agency was foreclosed from employing such a negative tone in the supervisor's statement and from including statements that insinuated that Mr. Lutz faked an injury in order to refuse to work. The agency agreed to "take all necessary steps to cooperate and facilitate the acceptance of Appellant's application." Settlement Agreement, ¶ 3c. The negative statements included in the supervisor's statement did not "facilitate the acceptance" of Mr. Lutz's application and were more likely to impede and prejudice the application than facilitate its acceptance. In short, the agency breached its obligation under the settlement agreement.

The remaining question is whether the Board correctly concluded that the breach was immaterial. "A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract." Thomas v. Dep't of Housing & Urban Dev., 124 F.3d 1439, 1442 (Fed. Cir. 1997); see also Lary, 472 F.3d at 1367. In Conant, we held that the Internal Revenue Service breached its obligation under a settlement agreement when it agreed to use its best efforts to effectuate an employee's application for disability retirement benefits, but instead, in response to the employee's disability application, submitted documents stating that the employee had no documented medical condition and repeated the charges that had led to the initial removal proceeding. 255 F.3d at 1376-77. We held the breach material because the documents and statements submitted to OPM prejudiced the disability proceedings. Id.

The essential purpose of ¶ 3c in the settlement agreement here was to accommodate Mr. Lutz's application for disability retirement. As in Conant, the negative statements contained in the supervisor's statements prejudiced the disability

proceedings. OPM explicitly relied on the supervisor's statements as one of two factors in denying the request for disability retirement, the other factor being a lack of medical evidence to establish a disabling medical condition. This is evident from OPM's recitation of the supervisor's statements that Mr. Lutz refused to work in his position; that he was sent for a fitness for duty examination and found fit for duty; and that he had a lifting restriction the agency would have honored, but that it could not because he never returned to duty. While it is impossible to know precisely to what extent these statements colored the analysis of OPM, it is clear that the statements did discourage OPM's acceptance of Mr. Lutz's disability retirement application. Therefore, the breach was not immaterial, and the Board erred in dismissing Mr. Lutz's petition for enforcement. Accordingly, the Board's decision to the contrary is reversed.

III.

Typically, in cases where an agency breaches a settlement agreement, the agreement is rescinded and the original claim on appeal to the Board is reinstated for adjudication. This was the remedy recommended by the AJ. AJ's Decision, slip op. at 4. On appeal, Mr. Lutz requests that we adopt the recommendation of the AJ that the Board (i) order rescission of the settlement agreement and (ii) remand the case to the AJ for adjudication of his challenge to the agency's removal/demotion action. In the alternative, Mr. Lutz requests that we remand the case to the Board for a further remand to OPM for a redetermination of his disability retirement claim based on a clean record, devoid of the negative remarks contained in the supervisor's statement previously submitted to OPM. We believe the best approach is to remand the case to the Board and to allow the Board to decide how to proceed, after giving the parties the opportunity

to express their views, including their views on a remand to OPM should Mr. Lutz request that.

## CONCLUSION

For the foregoing reasons, the decision of the Board denying Mr. Lutz's petition for enforcement is reversed. The case is remanded to the Board, which is instructed to conduct further proceedings consistent with this opinion.

<u>REVERSED</u> and <u>REMANDED</u>