NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID GALLOWAY,**
*Petitioner,*

v.

**DEPARTMENT OF AGRICULTURE,**
*Respondent.*

---

2009-3279

---

Petition for review of the Merit Systems Protection Board in AT0752061173-C-3.

---

Decided: October 13, 2010

---

DAVID GALLOWAY, of Tallahassee, Florida, pro se.

JESSICA R. TOPLIN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director.

---

Before BRYSON, DYK, and MOORE, *Circuit Judges.*

PER CURIAM.

David Galloway petitions for review of a decision of the Merit Systems Protection Board, which held that the Department of Agriculture substantially complied with a settlement agreement arising from a prior dispute. We affirm.

I

Mr. Galloway worked as a Budget Analyst for the Department of Agriculture until he was removed from that position as of August 8, 2006. On September 13, 2006, Mr. Galloway appealed the removal action to the Merit Systems Protection Board. The parties resolved that dispute through a settlement agreement. Under that agreement, the agency agreed to pay Mr. Galloway $83,000 and agreed to change the official reason for his removal from misconduct to inability to perform the major functions of his position. The agency also agreed to assist Mr. Galloway in his application for disability retirement by submitting agency documentation to the Office of Personnel Management ("OPM") "within five (5) workdays after receipt from [Mr. Galloway] or OPM" and by "promptly providing forms or information [Mr. Galloway] is not able to obtain from internet or other ready sources." The settlement agreement provided that the agency's assistance "will cease at the time a decision is rendered by OPM on [Mr. Galloway's] application for disability retirement." In return, Mr. Galloway withdrew his appeal before the Board as well as a formal complaint before the Equal Employment Opportunity Commission ("EEOC"). He also agreed to provide the agency with written notice of any alleged noncompliance with the settlement agreement "within 30 days of the date on which [Mr. Galloway]

knew or should have know[n] of the alleged noncompliance." On February 9, 2007, the Board approved the agreement, accepted it into the record for purposes of enforcement, and retained jurisdiction to ensure compliance with the agreement.[1]

On September 5, 2007, OPM sent a letter to the agency stating that it had approved Mr. Galloway's application for disability retirement. OPM added, however, that it needed to know the date of Mr. Galloway's last day of pay and it needed the agency to submit "final retirement records through the regular retirement processing channels," so that OPM "could send monthly interim annuity payments" and "complete final adjudication of the annuity." In response, Cameron McCluskey, a Human Resource Specialist with the agency, sent an e-mail to OPM dated September 5, 2007, which reported Mr. Galloway's effective removal date but not Mr. Galloway's last day of pay. That e-mail stated that OPM should contact Ms. McCluskey if it needed additional information.

On May 1, 2008, a retirement benefits specialist with OPM sent an e-mail to Ms. McCluskey stating that OPM needed to know Mr. Galloway's last day of pay. Ms. McCluskey obtained that information and conveyed it to OPM by telephone later that week. With that information, OPM activated Mr. Galloway's annuity on May 15, 2008, retroactive to his last day of pay on September 28, 2005.

---

[1] On April 26, 2007, Mr. Galloway filed a petition for enforcement of the settlement agreement on grounds not pertinent to this appeal. The Board ruled in favor of the agency, and Mr. Galloway did not seek review of that decision.

Meanwhile, on February 25, 2008, Mr. Galloway filed a second petition for enforcement, which was captioned "AT-0752-06-1173-C-2." In that petition, Mr. Galloway alleged that the agency had breached the settlement agreement by failing to submit his personnel records to OPM and that he had suffered "severe financial problems" as a result. On June 6, 2008, the administrative judge who was assigned to the case denied the petition for enforcement, finding that the agency was in compliance with the settlement agreement. In particular, the administrative judge found that Mr. Galloway had failed to notify the agency of the alleged breach, which constituted a material breach of the settlement agreement on his part and had the effect of relieving the agency of its obligations under the agreement. The administrative judge further stated that, even if Mr. Galloway had not breached the settlement agreement, the agency's duty to assist under the settlement agreement had ended because OPM had rendered its decision on Mr. Galloway's application for disability retirement.

Mr. Galloway petitioned for review of that decision before the full Board on July 2, 2008. The full Board held that Mr. Galloway's failure to notify the agency was not a material breach of the settlement agreement, because "the notice provision is not a matter of vital importance, which goes to the essence of the contract, and prior notice of an alleged breach was not the major benefit the agency received under the settlement agreement." *Galloway v. Dep't of Agric.*, 110 M.S.P.R. 311, 317 (2008). The full Board also held that OPM's September 5, 2007, letter did not release the agency from its duty to assist Mr. Galloway and that Mr. Galloway's last day in pay was the type of information contemplated by the settlement agreement. While the agency stated in a pleading that it had reported Mr. Galloway's last day in pay to OPM, the full Board

noted that the agency had not submitted any evidence to support that assertion. Accordingly, the full Board remanded the case "in order [for the administrative judge] to resolve the disputed factual issue of whether the agency reported [Mr. Galloway's] last day in pay to OPM." *Id.* at 319.

On remand, the case received a new caption, "AT-0752-06-1173-B-1" ("the B-1 case"). On March 11, 2009, the administrative judge determined that the agency was in substantial compliance with the settlement agreement and denied Mr. Galloway's petition for enforcement. While the administrative judge recognized that the agency had initially sent the wrong information to OPM, he found that the agency had made a good faith effort to comply with OPM's request and that the agency's mistake was not a material breach of the settlement agreement. Mr. Galloway filed a petition for review of the administrative judge's decision in the B-1 case with the full Board on March 31, 2009.

Before the full Board ruled in the B-1 case, Mr. Galloway filed a third petition for enforcement, which was captioned "AT-0752-06-1173-C-3" ("the C-3 case"). In that petition, Mr. Galloway argued that the agency had not complied with the settlement agreement because it "has not reimbursed him for the severe financial problems resulting from the agency's failure to timely submit his personnel records to OPM." The agency argued that Mr. Galloway's claim in the C-3 case was barred by the doctrine of res judicata, based on the administrative judge's ruling in the B-1 case that the agency's untimely submission was not a material breach of the settlement agreement. The administrative judge held that res judicata was inapplicable because the B-1 case was pending before the full Board and therefore was not a final decision.

Nevertheless, the administrative judge held that the law of the case doctrine precluded Mr. Galloway's claim because the agency's compliance had already been determined and because none of the exceptions to the law of the case doctrine applied to Mr. Galloway's petition. As a result, the administrative judge dismissed Mr. Galloway's C-3 petition on July 2, 2009.

Shortly thereafter, on July 14, 2009, the full Board denied Mr. Galloway's petition for review of the B-1 case in a final decision. On August 4, 2009, Mr. Galloway petitioned for review of the C-3 case before the full Board. Mr. Galloway then filed two petitions for review in this court, one for review of the B-1 case and one for review of the C-3 case. This court informed Mr. Galloway that an appellant cannot have an appeal pending before both this court and the Board for the same case. From the record, it appears that Mr. Galloway elected to pursue his appeal of the C-3 case before the Board, and on October 15, 2009, this court dismissed his appeal of the C-3 case for failure to pay the court's docketing fee and for failure to file a discrimination statement as required by Fed. Cir. R. 15(c). On October 27, 2009, the full Board denied Mr. Galloway's petition for review of the C-3 case in a final decision.

Even though the record suggests that Mr. Galloway intended to pursue the B-1 case before this court, Mr. Galloway paid the docketing fee for his appeal of the C-3 case on December 29, 2009, but did not pay the docketing fee for his appeal of the B-1 case. As a result, this court processed Mr. Galloway's submissions as pertaining to the C-3 appeal and reinstated that appeal on December 29, 2009. On February 23, 2010, Mr. Galloway's appeal of the B-1 case was dismissed for failure to pay the court's docketing fee and for failure to file a discrimination

statement. Mr. Galloway then wrote a letter to this court in which he expressed confusion over which appeal had been dismissed. On May 18, 2010, Mr. Galloway was informed that his appeal of the C-3 case remained open and his appeal of the B-1 case had been dismissed. In his informal brief, Mr. Galloway identifies the C-3 case as the decision under review, but his arguments address issues presented in the B-1 case, not the issues that the Board addressed in the C-3 case.

II

1. The government treats Mr. Galloway's appeal as challenging only the Board's decision in the C-3 case, and it argues that there is no error in the Board's decision in that case. If the appeal were directed solely at that decision, we would agree. The issue of whether the agency was in compliance with the settlement agreement was resolved in the B-1 case, and in the later C-3 case Mr. Galloway failed to offer any persuasive reason for the Board to reach a different conclusion than it had previously reached in the B-1 case. *See Griffin v. Office of Pers. Mgmt.*, 75 M.S.P.R. 263, 269-70 (1997).

The record, however, suggests that Mr. Galloway intended to challenge the Board's decision in the B-1 case. Even though Mr. Galloway's docketing fee payment and informal brief refer to the C-3 case, we recognize that Mr. Galloway, a pro se appellant, may have mistakenly used the wrong case number in referring to the appeal he sought to prosecute. The requirement of filing a timely notice of appeal is jurisdictional, but it does not foreclose an appellant from proceeding simply because he has mistakenly used the wrong caption or docket number in prosecuting his appeal. *See Sanabria v. United States*, 437 U.S. 54, 67 n.21 (1978) ("A mistake in designating the

judgment appealed from is not always fatal, so long as the intent to appeal from a specific ruling can fairly be inferred by probing the notice and the other party was not misled or prejudiced."); *Trustees of the Construction Indus. & Laborers Health & Welfare Trust v. Hartford Fire & Ins. Co.*, 578 F.3d 1126, 1128 (9th Cir. 2009) (wrong docket number on notice of appeal not fatal); *United States v. Grant*, 256 F.3d 1146, 1150-51 (11th Cir. 2001) (same); *Marshall v. Hope Garcia Lancarte, Inc.*, 632 F.2d 1196, 1197 (5th Cir. 1980) (same); *Scherer v. Kelley*, 584 F.2d 170, 175 (7th Cir. 1978) (same). In this case, did Mr. Galloway expressed his intention, in correspondence with this court, to pursue his appeal in the B-1 case. In addition, his informal brief makes clear that he is contesting the merits of the administrative judge's decision on his request for enforcement of the settlement agreement, which was the issue in the B-1 case, not the question whether his later enforcement petition was barred by law of the case, which was the issue in the C-3 case. Under these circumstances, we construe Mr. Galloway's filings in this court as sufficient to constitute a valid petition for review of the B-1 case.

2. On the merits, Mr. Galloway argues that the agency breached the settlement agreement because it failed to send his personnel records to OPM within the prescribed time period. He claims that the delay caused him to incur additional health care expenses, and he seeks an award of damages based on that loss. It is well settled, however, that the Board has no authority to award damages for breach of a settlement agreement and that it is limited to enforcing the agreement or directing that it be rescinded. *Foreman v. Dep't of the Army*, 241 F.3d 1349, 1352 (Fed. Cir. 2001); *Smith v. Dep't of the Army*, 72 M.S.P.R. 676, 679 (1996). Thus, even if Mr. Galloway can prove that the agency committed a material

breach of the settlement agreement, he is entitled only to have the agreement enforced or rescinded. *Lutz v. U.S. Postal Serv.*, 485 F.3d 1377, 1380 n.2 (Fed. Cir. 2007); *Wonderly v. Dep't of the Navy*, 68 M.S.P.R. 529, 532 (1995). Mr. Galloway currently seeks to reopen his EEOC complaint, which was dismissed as part of the settlement agreement. Yet reopening the EEOC complaint can occur only if the settlement agreement is rescinded. Rescinding the agreement would undo all of the settlement terms, causing Mr. Galloway to lose any benefits he received under the agreement—including the $83,000 payment that the agency made to Mr. Galloway. *See Mullins v. Dep't of the Air Force*, 79 M.S.P.R. 206, 212 (1998) (explaining the effect of rescinding a settlement agreement and remanding "to permit the appellant to make an informed choice" whether to pursue rescission).

The Board ruled that Mr. Galloway is not entitled to rescission of the settlement agreement because the agency substantially complied with the terms of the agreement. We conclude that substantial evidence supports the Board's ruling. Mr. Galloway argues that the agency failed to forward his personnel records to OPM, which allegedly precluded him from receiving his full annuity and health insurance. However, the delay in forwarding the records in general appears not to have been the cause of the delay in OPM's action; rather, OPM's action was delayed solely because of the delay in sending OPM the information as to Mr. Galloway's last day of pay. The record indicates that OPM has adjudicated Mr. Galloway's annuity and that Mr. Galloway has received his retirement benefits. *See* A122 (e-mail from OPM to Mr. Galloway stating, "As soon as we have last day of pay confirmed by your employer, I should be able to do reinstatement and transfer in of your health insurance

to the OPM Retirement System."); A103 (timeline pre-pared by Mr. Galloway noting that, on May 14, 2008, "OPM sent me a letter [stating] that my application for disability retirement was completed"); Pet. Br. 7 ("On or about December 7, 2009, the Petitioner received a refund of $17,157.33 from the National Pay Center for payments he made for his health insurance."). It is true that the information the agency initially provided to OPM did not include the last day of pay and that the omission delayed Mr. Galloway's annuity determination. Nevertheless, the record shows that his annuity was made retroactive to his last day of pay, and that he has received all that he was entitled to. *See Doiron v. U.S. Postal Serv.*, 68 M.S.P.R. 170, 172 (1995) (the agency substantially complied with a Board order to give the appellant back pay, even though payment was delayed, because the appellant "has now been paid the amount to which he is entitled").

While the settlement agreement required the agency to provide any requested information within five working days, the delay in providing the information regarding Mr. Galloway's last day of pay does not require rescission of the settlement agreement. First, it is clear that the primary benefits of the agreement for Mr. Galloway were receiving the lump sum payment and securing the agency's assistance in order to obtain disability retire-ment benefits. The agency paid the lump sum, promptly responded to OPM's requests, and provided both Mr. Galloway and OPM with contacts for any follow-up re-quests.[2] Mr. Galloway subsequently received his full

---

[2] We note that Mr. Galloway failed to report any al-leged noncompliance to the Department of Agriculture as required by the settlement agreement. While we agree with the full Board that Mr. Galloway's failure to notify the agency of its default was not a material breach of his obligations under the agreement, it nonetheless likely

disability retirement benefits, retroactive to his last day of pay.  While the settlement agreement contemplated a quick and accurate response from the agency, we agree with the Board that the agency's mistake regarding the last day of pay was not a material breach because it did not "relate[] to a matter of vital importance, or go[] to the essence of the contract." *Thomas v. Dep't of Housing & Urban Dev.*, 124 F.3d 1439, 1442 (Fed. Cir. 1997); *see Diehl v. U.S. Postal Serv.*, 82 M.S.P.R. 620, 624 (1999). The delay in providing that information did not significantly deprive Mr. Galloway of the benefit he reasonably expected from the agreement, *see Corsiglia v. U.S. Postal Serv.*, 69 M.S.P.R. 5, 11 (1995), to the extent that it would justify allowing Mr. Galloway to rescind the agreement (even assuming that, given the choice, he would elect rescission and the accompanying surrender of the benefits he has received under the agreement).  Therefore, we agree that the agency substantially complied with the settlement agreement and that the Board properly denied relief on Mr. Galloway's petition for enforcement.

**AFFIRMED**

---

contributed to the delay in processing his retirement application, because if he had advised the agency of its error, it would have been alerted to the error sooner and presumably could have acted to correct it at that time. Mr. Galloway argues that the agency ignored "many opportunities to correct" its mistake.  In support of that claim he points to several e-mails between himself and an OPM representative indicating that OPM was aware of the agency's error.  However, the e-mail exchanges with OPM do not show that the Department of Agriculture was aware of the error.  To the contrary, the record shows that as soon as OPM contacted the Department of Agriculture and identified the error, the Department of Agriculture promptly corrected its mistake.