NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HEATHER A. MELTON,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2016-1780

---

Petition for review of the Merit Systems Protection Board in No. CH-0752-09-0448-X-1.

---

Decided: November 3, 2016

---

HEATHER A. MELTON, Clarksville, TN, pro se.

ROBERT C. BIGLER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.

---

Before LOURIE, O'MALLEY, and TARANTO, *Circuit Judges.*

PER CURIAM.

Heather Melton was a civilian employee of the Department of the Army when, in 2009, the Army suspended her because she did not maintain a needed security clearance. She challenged that suspension before the Merit Systems Protection Board. In 2010, she and the Army entered into a settlement agreement, which, the Board eventually ruled, settled all pre-settlement employment-related matters. Ms. Melton later petitioned the Board to enforce the agreement, claiming that the Army violated the agreement by withholding money from amounts otherwise owed to her post-settlement to recoup pre-settlement government payments of her health care premiums. The Board ordered the Army to refund the money it had withheld, and the Board later determined that the Army complied with the order.

Ms. Melton now petitions for review by this court. She argues that the Army has still not complied with the settlement agreement because, among other things, a post-settlement Leave and Earnings Statement shows a deduction of $1,019.89 for repayment of pre-settlement debt to the government. Because the Board did not address that Statement, we vacate and remand for further consideration of her entitlement to have that $1,019.89 refunded to her. We reject Ms. Melton's other challenges.

I

Ms. Melton was indefinitely suspended without pay from her position as an Information Technology Specialist with the Army on February 12, 2009. She was returned to duty on January 31, 2010, but placed on ordinary leave without pay on May 23, 2010. After exhausting possibilities of relief from the Office of Special Counsel and the Central Clearance Facility, Ms. Melton appealed her initial suspension to the Board.

The parties entered into a settlement agreement with an effective date of August 5, 2010. In the agreement, the Army promised to pay Ms. Melton a lump sum of $35,000 in exchange for her voluntary resignation and agreement to "release the ARMY from all claims or demands she may have arising out of her employment with the ARMY occurring prior to the effective date of this Agreement." Respondent's App. 57–58. The agreement states that it is a "full and final settlement of all issues involving the employment and resignation of Ms. Melton from the employment of the ARMY, as well as any other matters related to Ms. Melton's employment with the ARMY." *Id.* at 57. Ms. Melton resigned on August 7, 2010, the Board dismissed the appeal as settled on August 16, 2010, and Ms. Melton's attorney was issued a voucher for $35,000 on August 23, 2010.

A dispute arose almost immediately. On September 9, 2010, Ms. Melton received a bill from the Defense Finance and Accounting Service (DFAS) Civilian Pay Office for health insurance premiums that the government had paid on her behalf before the settlement—specifically, while she was on leave without pay from February 12, 2009, through January 31, 2010, and from May 23, 2010, through August 7, 2010. When Ms. Melton did not pay the amount due, the debt was referred to the Defense Debt Management Service and then to the U.S. Department of the Treasury for collection through wage garnishment. Ms. Melton requested an administrative hearing on September 24, 2013. On December 17, 2013, the DFAS hearing official upheld the validity of Ms. Melton's $3,797.40 debt (consisting of $2,929.29 in principal plus $868.11 in interest plus fees) and determined that garnishment was appropriate. In payment of that debt, $2,998.72 was garnished ($2,981.72 towards

the debt and a $17 Treasury fee).  Respondent's App. 65–67.[1]

Ms. Melton filed a petition for enforcement of the settlement agreement with the Board on January 28, 2014, claiming that any attempt to collect the pre-settlement debt was a violation because the settlement agreement had cancelled the debt.  On January 5, 2015, the Board-assigned administrative judge found that the Army was entitled to collect the health insurance premium debt because that debt was not covered by the settlement agreement.  On June 18, 2015, the full Board reversed, holding that the language of the settlement agreement was "unambiguous" in its intent to be a "full and final settlement of all employment-related matters," including the health insurance premium debt.  Respondent's App. 44–45.  The Board ordered the Army to document its compliance with the settlement agreement within 45 days.  The Army subsequently submitted documentation that it had cancelled the $2,929.29 debt principal and had refunded to Ms. Melton all the money it had garnished—a total of $2,998.72, representing $2,981.72 it had collected towards the debt plus a $17 collection fee.  Satisfied that the Army was in compliance, the Board entered a final order dismissing the petition for enforcement.

Ms. Melton petitions for review by this court.  She contends that the Army is not yet in compliance with the settlement agreement because, among other things, a Leave and Earnings Statement, dated after the settlement took effect, shows that the government deducted $1,019.89 from her final paycheck for what she alleges is

---

[1]  It is not evident from the limited documentation available to us what money owed to Ms. Melton the government subtracted the $2,998.72 from.  Ms. Melton refers both to her "family's income tax return" and to her "wages."  Petitioner's Br. 8.

a pre-settlement debt. She also claims a violation of the agreement on the ground that the Army promised to hire her back but has not done so. In addition, her informal brief to us makes certain allegations not tied to enforcement of the settlement agreement—that she was suspended and otherwise subjected to discrimination based on her reporting of espionage spyware on military computers, that she has been deprived of her civil rights, and that the Army's actions have caused her emotional distress.

We have jurisdiction under 28 U.S.C. § 1295(a)(9). We note that, after she filed her informal brief, Ms. Melton filed Form 10 under this court's Rules. Respondent's App. 69. In that Form, she states that she has abandoned any claims based on race or related matters that in other contexts present impediments to this court's jurisdiction in light of 5 U.S.C. §§ 7702(a)(1) and 7703(b)(1)–(2). *See Kloeckner v. Solis*, 133 S. Ct. 596, 607 (2012). We need not address whether, based on her informal brief alone, we would have faced questions about this court's jurisdiction. *See Oja v. Dep't of* Army, 405 F.3d 1349, 1355 (Fed. Cir. 2005). In light of her Form 10, there are no such questions now.

## II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). It is Ms. Melton's burden to establish agency error. *McCrary v. Office of Pers. Mgmt.*, 459 F.3d 1344, 1347 (Fed. Cir. 2006). "A settlement agreement is a contract, and its construction is a matter of law which this court reviews de novo." *Lutz v. U.S. Postal Serv.*, 485 F.3d 1377, 1381 (Fed. Cir. 2007) (quoting *Lary v. U.S. Postal Serv.*, 472 F.3d 1363, 1367 (Fed. Cir. 2006)). It is

Ms. Melton's burden to show material non-compliance
with the terms of the settlement agreement. *Id.*

## A

Regarding the settlement agreement, we address
Ms. Melton's arguments that the Army still has not
complied with the agreement. We note first that, to the
extent that Ms. Melton is now challenging the validity of
the settlement agreement, we do not think that any such
challenge is properly before us. A petitioner may have a
settlement set aside if "the agreement is unlawful, was
involuntary, or was the result of fraud or mutual mis-
take." *Sargent v. Dep't of Health & Human Servs.*, 229
F.3d 1088, 1091 (Fed. Cir. 2000). The Board acknowl-
edged some language in Ms. Melton's petition before it
which alleged "mutual mistake" and "fraud," but it de-
clined to treat those allegations as a challenge to the
settlement agreement itself because Ms. Melton did not
seek to invalidate the settlement agreement. We see no
error in the Board's interpretation of Ms. Melton's peti-
tion before it, and, on appeal, Ms. Melton does not press
her claims of fraud or mutual mistake. To the extent that
Ms. Melton is now challenging the validity of the settle-
ment agreement on other grounds, those grounds were
not presented to the Board and are therefore not properly
before us.

## 1

As to the Army's compliance with the settlement
agreement, Ms. Melton makes essentially two arguments
about Army non-compliance regarding collection of the
pre-settlement debt based on government payment of her
health insurance premiums. First, she contends that the
Army has not refunded all the money it garnished. She
does not provide us with any documentation of the gar-
nished amount, but she states in her opening brief that
the Army "garnished [her] family's income tax return for
almost $3,000." Petitioner's Br. 8. That statement is

consistent with the $2,998.72 amount the government indicates was refunded to her. Respondent's App. 67. Substantial evidence, in the form of a record showing the cancellation of Ms. Melton's debt and a Treasury check for $2,998.72, supports the Board's finding that the government has cancelled the debt and refunded what it garnished.

Ms Melton's second collection-focused argument is that the Army violated the agreement because, after the agreement took effect, it deducted $1,019.89, from money otherwise due her, to recoup some of the pre-settlement government payments of her health insurance premiums. The Army does not dispute the Board's conclusion that it must refund money collected after the effective date of the settlement in payment of pre-settlement employment-related debts that Ms. Melton owed the Army. We conclude that the $1,019.89 deduction warrants a remand to the Board for further examination.

Ms. Melton has provided evidence suggesting that the Army improperly collected, and has not refunded, the $1,019.89 she identifies. Specifically, she has provided a Leave and Earnings Statement for the pay period ending August 28, 2010, a period after the effective date of the settlement and her resignation.[2] Petitioner's Br. Apps. B, C; Respondent's Br. 68. It shows an amount to be paid out for accrued annual leave, but then includes a $1,019.89 deduction for prepaid federal employee health benefits. Respondent's App. 68. It is not clear how this $1,019.89 amount was calculated, but the figure exactly offsets the net amount the Army otherwise would have

---

[2]    Ms. Melton shows that she filed the Statement with the Board on October 20, 2015, as part of the Compliance Referral docket CH-0752-09-0448-X-1. Petitioner's Apps. B, C. The government does not challenge the timeliness of that submission. *See* Respondent's Br. 8–9.

paid Ms. Melton for her annual leave accrued before her resignation.  The statement shows that she was owed $2,158.32 of accrued leave, minus $988.35 for advanced sick leave she had taken, resulting in $1,169.97.  *Id.* From that figure, $150.08 of taxes was deducted ($2.18 for Medicare, $9.31 for OASDI, and $138.59 in federal tax), leaving $1,019.89 of wages owed her.  *Id.*  Exactly that amount was then deducted in payment of the health insurance premium debt, such that Ms. Melton's net pay for the period was zero.  *Id.*

It appears undisputed that the $1,019.89 deduction was for money owed for a pre-settlement debt for government payment of Ms. Melton's health insurance premiums and, in addition, that Ms. Melton was entitled to a refund of that amount—collected after the settlement—under the Board's uncontested interpretation of the settlement agreement.  The government states: "As the pay period covered by the [Leave and Earnings Statement] was after August 5, 2010, Ms. Melton would be entitled to a refund of the $1,019.89 deducted during this period."  Respondent's Br. 8.

The government argues that there nevertheless is not harmful error in the Board's ruling now here on review. The government's rationale is that "the refund check [Ms. Melton] provides shows a total of $2,998.72 was refunded to her, which presumably would include the $1,019.89."  Respondent's Br. 8–9.  Indeed, the government adds, the refund check is greater than $2,336.63, "the total prepaid health insurance premium collected year to date" shown on the August 28 Leave and Earning Statement.  *Id.* at 9.  For those reasons, the government concludes, Ms. Melton is not "owed any additional money."  *Id.* at 8.

The Board has not specifically addressed the $1,019.89 issue.  Nor, therefore, has it addressed the argument now advanced by the government for why Ms.

Melton is not owed more than she already has been repaid. And we have reason to doubt the soundness of the government's argument.

The total amount of the premiums the government paid on Ms. Melton's behalf was $5,265.82. In determining the amount Ms. Melton still owed at the time of her administrative garnishment hearing, DFAS subtracted *both* the $1,316.64 deducted from the paychecks Ms. Melton received during the February 1, 2010, through May 22, 2010, period ($164.58 for each of 8 pay periods when she was not on leave without pay) *and* the $1,019.89 deducted on the final Leave and Earnings Statement for the pay period ending August 28, 2010. Because she had already paid back a total of $2,336.53 ($1,316.64 plus $1,019.89), DFAS determined that Ms. Melton's remaining debt principal was $2,929.29 ($5,265.82 minus $2,336.53)—to which was added interest and fees to arrive at the final debt of $3,797.40. It was based on that amount that the government garnished "almost $3,000" (according to petitioner) or $2,998.72 (according to the Army). And the amount eventually refunded to her after the Board's enforcement ruling was tied to that garnished amount, collected in payment of a debt calculated on the premise that the government had already recouped the $1,019.89.

If that particular recoupment was improper, as the government seemingly agrees, the refund seemingly did not repay it. That amount appears still to be owed to Ms. Melton, in addition to the money already refunded for the garnished amount. But we draw no final conclusion. Instead, we remand to the Board for consideration of the issue.

2

Ms. Melton contends that the Army is out of compliance with the settlement agreement on an additional ground: she alleges that the Army promised in the settle-

ment agreement to rehire her and has not done so. The Board did not address this argument, which the government says was not raised before the Board, Respondent's Br. 13. Regardless, we see no merit in the argument. Ms. Melton has provided us no documentation of the Army's alleged promise. And the settlement agreement not only clearly states that Ms. Melton agreed to resign voluntarily but also contains a merger clause declaring: "This Agreement constitutes the complete understanding between Ms. Melton and the ARMY and supersedes any previous agreements or understandings between the parties. No other promises or agreements will be binding unless signed by both parties." Respondent's App. 58–59. Ms. Melton has not shown the promise she alleges to support this non-compliance argument.

B

There is no error in the Board's refusal to consider Ms. Melton's whistleblower reprisal claim. The Board correctly determined that any claims she may have had relating to her employment were released as part of the settlement agreement, in which she agreed "to release the ARMY from all claims or demands she may have arising out of her employment with the ARMY occurring prior to the effective date of his Agreement." Respondent's App. 58. Ms. Melton does not contend that she has suffered retaliation since the effective date of the settlement.

C

Ms. Melton's remaining claims were not part of the Board's decision, and we decline to consider them for the first time on appeal. The Board noted in its final decision, which found the Army in compliance and dismissed the petition for enforcement, that Ms. Melton had raised many issues in her filings that were unrelated to the compliance issues before the Board, and it correctly determined that its jurisdiction was limited to enforcing the terms of the settlement agreement. Respondent's

App. 53 n.2 (citing 5 C.F.R. §§ 1201.181(a), 1201.182(a)); *see Manley v. Dep't of the Air Force*, 91 F.3d 117, 119–20 (Fed. Cir. 1996) (holding that, while the Board's jurisdiction to enforce a settlement agreement was not limited to the aspects of the settlement agreement which are within the Board's independent jurisdiction, the Board's enforcement power was limited to the scope of the settlement agreement). Ms. Melton has not shown that her remaining claims involve the settlement agreement so as to come within the Board's enforcement jurisdiction in this proceeding. To the extent that those claims were raised before the Board, the Board correctly declined to enforce them.

## CONCLUSION

For the foregoing reasons, we affirm the Board's decision with one exception: We vacate the decision to the extent it denies a further refund of $1,019.89, and we remand for consideration of that issue.

No costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**